Elon Berk, Esq. [SBN 209642]
**THE BERK LAW FIRM, APC.**
15250 Ventura Blvd., Suite 1220
Sherman Oaks, California 91403
Tel: (818) 205-1555
Fax: (818) 205-1559

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICIAL FEATURE ENTERTAINMENT GROUP, LLC. A California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ADF UNIT TRUST, INC., a Florida corporation, JOAN PHOENIX-FRENCH, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT;**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**3. PROMISSORY ESTOPPEL;**<br>**4. FRAUD;**<br>**5. UNJUST ENRICHMENT;**<br>**6. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**7. QUANTUM MERUIT;**<br>**8. DECLARATORY RELIEF;**<br>**9. INJUNCTIVE RELIEF; and**<br>**10. UNFAIR COMPETITION.** |

Plaintiff, Official Feature Entertainment Group, LLC. ("Plaintiff" or "OFEG"), alleges upon personal knowledge as to its own acts, and upon information and belief as to all other matters, as follows:

## I. PARTIES

1. Plaintiff Official Feature Entertainment Group, LLC ("OFEG") is a California limited liability company with its principal place of business in Beverly Hills, California. OFEG is a citizen of

California.

2. Defendant, ADF Unit Trust, Inc. ("ADF"), is a Florida corporation with its principal place of business in Newport News, Virginia. ADF is a citizen of Florida and Virginia.

3. Defendant Joan Phoenix-French ("Phoenix-French") is an individual domiciled in Virginia. Phoenix-French is a citizen of Virginia. At all relevant times, Phoenix-French was the President, CEO, and managing agent of ADF.

4. DOES 1 through 50 are fictitiously named defendants whose true identities are currently unknown. Each Doe defendant is legally responsible for the acts alleged herein.

5. At all relevant times, each Defendant acted as the agent, alter ego, partner, or joint venturer of the other Defendants, within the scope of such agency and with corporate ratification.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks damages exceeding $1,000,000,000.

7. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because they derive from a common nucleus of operative facts.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Central District of California, including commercial negotiations,

submission of institutional documentation, and video transactions directed into Beverly Hills.

9. This Court has personal jurisdiction over Defendants because they purposefully directed commercial activities into California, establishing minimum contacts under International Shoe Co. v. Washington, 326 U.S. 310 (1945).

## III. FACTUAL ALLEGATIONS

10. In February 2026, OFEG and Defendants opened negotiations to secure a $1,000,000,000 self-liquidating, asset-backed credit facility (the "Facility") using OFEG's pre-approved underwriting access at UBS Wealth Management.

11. On February 23, 2026, OFEG delivered a detailed Letter of Intent ("LOI") to Defendants setting forth all material terms: (a) a $1B facility limit, (b) a 60/40 Split-at-Source allocation favoring ADF, (c) a receding equity interest schedule, and (d) structured profit sharing.

12. Twenty-six minutes later, Phoenix-French accepted the material terms via written text stating, "Thank you. Blessings.".

13. On February 28, 2026, to advance the transaction, Phoenix-French executed and returned a comprehensive 23-page corporate Know Your Customer ("KYC") compliance package to OFEG under penalty of perjury.

14. Defendants repeatedly pressured OFEG to accelerate performance, explicitly inquiring via text whether the UBS bankers were fully staged.

15. In reliance on these manifestations of intent, OFEG performed exhaustive financial services. Specifically, OFEG identified and cured latent maturity defects in ADF's legacy trade tickets, modifying them to "Series E" assets—the sole reason the Facility met the $1B institutional threshold.

16. To preserve the contractually mandated 60/40 segregated account structure at the bank level, OFEG directed its UBS underwriting team to place a temporary administrative hold on formal intake pending final corporate signature of the LOI instrument.

17. On March 5, 2026, Phoenix-French mirrored this instruction in writing, stating, "Please do not submit to UBS Back Office until AXF responds.".

18. On March 10, 2026, immediately after capturing the benefit of OFEG's banking introductions, corporate structures, and structural asset corrections, Defendants abruptly issued a Cease and Desist letter repudiating the joint venture and claiming no contract existed.

## IV. CLAIMS FOR RELIEF

### COUNT I
### FOR BREACH OF CONTRACT
### (Against all Defendants)

19. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 18 of this Complaint.

20. **Existence of Contract:** The February 23, 2026 LOI, combined with Defendants' contemporaneous text messages, written compliance filings, and course of performance, formed a binding agreement containing all material economic terms.

21. **Plaintiff's Performance:** Plaintiff performed all obligations by conducting forensic accounting, correcting ADF asset maturity defects, structuring underwriting parameters, and staging the institutional bank submission.

22. **Defendants' Breach:** Defendants breached the agreement by refusing to execute the formal contract, issuing a total repudiation on March 10, 2026, and converting Plaintiff's work product.

23. **Resulting Damages:** As a direct and proximate result of the breach, Plaintiff suffered substantial economic damages in an amount to be proven at trial, but not less than its 40% contractual share ($400,000,000).

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against All Defendants)**

24. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 23 of this Complaint.

25. Under California law, every contract contains an implied covenant of good faith and fair dealing that imposes a duty on each party not to do anything that will deprive the other party of the benefits of the contract.

26. Plaintiffs performed all conditions, covenants, and promises required of them under the Agreement, including resolving critical maturity defects in Defendants' underlying trade tickets to cross the $1B threshold, establishing the institutional bridge to UBS Wealth Management, and fully staging the Investment Bank compliance package.

27. Defendants unfairly interfered with Plaintiffs' right to

receive the fruits of the Agreement by engaging in a bad-faith course of conduct designed to misappropriate Plaintiffs' work product while avoiding their own contractual obligations. Specifically, Defendants:

(a) induced Plaintiffs to complete institutional compliance staging while harboring a secret, pre-meditated intent to exclude Plaintiffs;

(b) weaponized a bad-faith, manufactured Cease and Desist on March 10, 2026, to abruptly sever the transaction after their trade defects were corrected; and

(c) attempted to unilaterally exploit the newly validated $1 Billion Facility asset structure through UBS or alternative channels to the total exclusion of Plaintiffs.

28. Defendants' conduct went beyond a mere breach of contractual terms and constituted a conscious, bad-faith frustration of the agreed common purpose of the Facility, in direct violation of the implied covenant.

29. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages, including the loss of their agreed 40% Split-at-Source revenue allocation, in an amount no less than $1,000,000,000, to be proven at trial.

**COUNT III**
**Promissory Estoppel**
**(Against All Defendants)**

30. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 29 of this Complaint.

31. **Clear and Unambiguous Promise:** Defendants made clear, definite promises to proceed with the Facility under the 60/40 Split-at-Source structure via written affirmations and executed KYC affidavits.

32. **Reasonable and Foreseeable Reliance:** Plaintiff reasonably and foreseeably relied on these promises by dedicating proprietary assets to cure ADF's defective security instruments.

33. **Detriment:** In reliance, Plaintiff forbore alternative, pre-approved multi-billion-dollar international capital transactions.

34. **Injustice Avoided Only by Enforcement:** Defendants accepted and retained the structural benefits of Plaintiff's reliance; injustice can only be avoided by enforcing the promises.

**COUNT IV**
**Fraud (Intentional Misrepresentation)**
**(Against all Defendants)**

35. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 34 of this Complaint.

36. **Misrepresentation of Fact:** Defendants represented their fixed intent to finalize the joint credit facility via distinct communications on Feb 23 (text at 3:24 PM), Feb 24 (text at 1:59 PM), Feb 27 (oral representations at the Beverly Hills bank conference), Feb 28 (written compliance transmissions), and March 5 (written hold ratification).

37. **Knowledge of Falsity (Scienter):** These representations were false when made. Defendants never intended to participate as joint

parties; their true intent was to extract Plaintiff's asset corrections and bank relationships.

38. **Intent to Induce Reliance:** Defendants made these statements to induce Plaintiff to perform critical forensic underwriting and clear their assets through bank compliance.

39. **Justifiable Reliance:** Plaintiff justifiably relied on Defendants' statements made under penalty of perjury and accelerated its commercial performance.

40. **Resulting Damage:** Plaintiff suffered catastrophic loss of asset value and business opportunities. Punitive damages are warranted because Defendants acted with malice, oppression, and fraud under Cal. Civ. Code § 3294.

**Count V**
**Unjust Enrichment**
**(Pled in the Alternative to Contract Claims)**
**(Against All Defendants)**

41. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 40 of this Complaint.

42. **Receipt of a Benefit:** Defendants received distinct financial benefits from Plaintiff, including proprietary underwriting structures, key bank positioning, and critical adjustments curing legacy asset defects.

43. **Retention at Plaintiff's Expense:** Defendants retained these high-value asset upgrades while completely excluding Plaintiff from the transaction.

44. **Retention is Unjust:** Allowing Defendants to pocket these forensic improvements without equitable restitution is unconscionable.

**Count VI**
**Intentional Interference with Prospective Economic Advantage**
**(Against All Defendants)**

45. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 44 of this Complaint

46. **Economic Relationship:** Plaintiff maintained a valid economic relationship with UBS Wealth Management and the UBS Investment Bank, carrying a high probability of future economic benefit.

47. **Defendant's Knowledge:** Defendants had actual knowledge of this specific institutional relationship and participated directly in joint banking conferences.

48. **Intentional Disruptive Acts:** Defendants engaged in independently wrongful conduct—namely, the verified fraud and statutory unfair competition detailed herein—to disrupt the relationship.

49. **Actual Disruption:** Defendants' fraudulent extraction and sudden March 10 repudiation directly halted and disrupted the fully staged banking transaction.

50. **Economic Harm:** Plaintiff suffered immediate proximate economic injury exceeding $400,000,000.

**Count VII**
**Quantum Meruit**
**(Pled in the Alternative to Contract Claims)**
**(Against All Defendants)**

51. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 50 of this Complaint.

52. Elements of the claim:

53. **Rendering of Valuable Services:** Plaintiff performed specialized forensic, legal-compliance, and financial underwriting services for Defendants' direct benefit.

54. **Services Requested:** Defendants explicitly requested and induced these services through directives to accelerate interaction with the underwriters.

55. **Expectation of Compensation:** Plaintiff performed these complex services with a clear, mutually understood expectation of commercial compensation.

56. **Acceptance of Services:** Defendants accepted, verified, and deployed Plaintiff's work product to improve their institutional compliance standing.

**Count VIII**
**Declaratory Relief**
**(Against All Defendants)**

57. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 56 of this Complaint.

58. **Actual Controversy:** An immediate, justiciable controversy exists between the parties regarding whether the LOI and subsequent

performance by all Parties constitute a binding contract.

59. **Declaration Required:** Judicial declaration is necessary to clarify the parties' legal rights, specifically Plaintiff's 40% equity right in the Facility and Defendants' joint performance obligations.

**Count IX**
**Injunctive Relief**
**(Against All Defendants)**

60. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 59 of this Complaint.

61. **Likelihood of Success / Serious Question:** Plaintiff is highly likely to prevail on its claims of contract breach and pre-meditated fraud.

62. **Irreparable Harm:** Plaintiff will suffer immediate, irreparable injury if Defendants utilize Plaintiff's proprietary financial configurations and bank introductions independently, a harm for which money damages are inadequate

63. **Balance of Equities:** The balance of hardships tips sharply in Plaintiff's favor, as an injunction merely holds Defendants to their compliance representations.

64. **Public Interest:** Enjoining commercial fraud and asset misappropriation directly serves the public interest.

**Count X**
**Unfair Competition**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**
**(Against All Defendants)**

65. Plaintiff incorporates by reference, as though fully set forth, paragraphs 1 through 64 of this Complaint.

66. **Unlawful Prong:** Defendants' acts constitute breach of contract and common law fraud, satisfying the predicate unlawful business act criteria.

67. **Unfair Prong:** Defendants' practice of mining small business entities for complex work product and walking away under the cover of a bad-faith cease and desist letter violates established public policy.

68. **Fraudulent Prong:** Defendants' deception was calculated to mislead reasonable market participants and did mislead Plaintiff into rendering uncompensated professional services.

69. **Injury in Fact:** Plaintiff lost money and property as a direct result, establishing standing to seek restitution and statutory injunctions under Cal Civ Code § 17203, et sec.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A. For compensatory damages according to proof, in an amount not less than $1,000,000,000;

B. For full equitable restitution and disgorgement of all financial benefits retained by Defendants;

C. For punitive and exemplary damages under California Civil Code § 3294;

D. For temporary, preliminary, and permanent injunctive relief under FRCP 65 and Cal. Bus. & Prof. Code § 17203;

E. For a binding judicial declaration of contractual rights

under 28 U.S.C. § 2201;

F. For reasonable attorneys' fees, expert costs, and pre-judgment interest at the maximum legal rate; and

G. For such other relief as the Court deems equitable and proper.

## VI. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Dated: September 13, 2026

**THE BERK LAW FIRM, APC.**

By: **/S/ Elon Berk, Esq.**
Elon Berk, Esq.,
Attorney for Plaintiff